CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
January 02, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JADE M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:23-cv-00221 |
| | ) |
| COMMISSIONER OF | ) By: Elizabeth K. Dillon |
| SOCIAL SECURITY ADMINISTRATION, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jade M. (Jade) brought this action for review of the final decision made by defendant, the Commissioner of Social Security (Commissioner), finding her not disabled and therefore ineligible for supplemental security income under the Social Security Act. (Compl., Dkt. No. 2.) Jade moved for summary judgment. (Dkt. No. 13.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the motion to U.S. Magistrate Judge C. Kailani Memmer for a report and recommendation (R&R). On August 5, 2024, the magistrate judge issued her R&R, finding that substantial evidence supported the Commissioner's final decision. (R&R, Dkt. No. 20.) Jade filed an objection to the R&R on August 19, 2024 (Obj. to R&R, Dkt. No. 21), and the Commissioner filed a response thereafter (Resp. to Pl.'s Obj. to R&R, Dkt. No. 22).

After de novo review of the pertinent portions of the record, the R&R, and the filings by the parties, in conjunction with the applicable law, the court agrees with the magistrate judge's

---

[1] Because of privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

recommendation. Accordingly, the court will overrule Jade's objections, adopt Judge Memmer's R&R in its entirety, and affirm the Commissioner's final decision.

## I. BACKGROUND

The court adopts the procedural background and recitation of facts as set forth in the report. (R&R 3–28.) Briefly, the Administrative Law Judge (ALJ) determined that Jade suffers from the severe impairments of cannabis use disorder, methamphetamine use disorder, substance induced mood disorder, substance induced psychosis, schizophrenia, depressive disorder, anxiety disorder, and personality disorder. (Admin. Tr. 24, Dkt. No. 10-1.) The ALJ found, that including Jade's substance use, the severity of her impairments met the criteria of sections 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 ( depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders) of 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 25.) Additionally, the ALJ concluded that if Jade "stopped the substance use, the remaining limitations would cause more than a minimal impact on claimant's ability to perform basic work activities; therefore, [Jade] would have a severe impairment or combination of impairments." (*Id.* at 28.) However, if Jade stopped the substance use, these impairments or combination of impairments, the ALJ reasoned, would not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.)

The ALJ proceeded to conclude that without Jade's substance use, she has the residual functional capacity (RFC)

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand, remember and apply simple instructions and performing simple, unskilled tasks. She can have occasional interaction with coworkers and supervisors but no interaction with the public. She should avoid exposure to large groups of people of more than 30 individuals. She is expected to be off task 8% of the workday. She is expected to be absent from work one day per month.

(*Id.* at 32.) It was determined that Jade had no past relevant work experience. (*Id.* at 37.) The ALJ found that "[if] the claimant stopped the substance use, considering the age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including work as a garbage collector, nursery laborer, and laundry laborer. (*Id.* at 37–38.) Therefore, the ALJ determined that Jade was not disabled. (*Id.* at 36.)

## II.  DISCUSSION

### A. Standard of Review

When reviewing the decision of an ALJ, the court must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 353 (4th Cir. 2023) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [the court] defer[s] to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (internal quotation marks omitted).

Nonetheless, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review." *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Instead, "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Comm'r*, 983 F.3d 83, 95 (4th Cir. 2020) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). If it does so, and the decision is supported by substantial evidence, the ALJ's decision must be upheld. *See id.* at 94; 42 U.S.C. § 405(g).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). "If a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only." *Id.*

## B. Jade's Objections to the R&R

Jade raises many objections to the R&R, all of which repeat arguments raised below. This court addresses three objections regarding supposed errors in the R&R's conclusions. Jade asserts: (1) the ALJ's assessment of Jade's substance abuse did not comply with the requirements of Social Security Ruling (SSR) 13-2p and is not supported by substantial evidence; (2) the ALJ

4

inadequately considered the medical opinions of Dr. Tessnear and Dr. Gardner; and (3) the ALJ's conclusions about Jade's subjective allegations were not supported by substantial evidence. Each objection is discussed in turn.

### 1. ALJ's evaluation of Jade's substance abuse under SSR 13-2p was sufficient and supported by substantial evidence.

First, Jade argues that the R&R "erred in concluding the ALJ's analysis of [Jade's] substance abuse and conclusion that her substance abuse is a contributing factor material to the determination of disability are supported by substantial evidence." (Obj. to R&R 1.) Jade contends that the ALJ "mischaracterized the evidence to support his conclusions and failed to provide an explanation supported by substantial evidence as to how he determined [Jade's] is one of those cases under SSR 13-2p that only requires a matter of weeks of sobriety, when in fact, [Jade] was never substance free." (*Id.* at 5.)

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine this, the ALJ evaluates "which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [his] current disability determination, would remain if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(2). Then, the ALJ "determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." *Id.* "The claimant [has] the burden of proving disability throughout the [drug addiction and alcoholism] DAA materiality analysis." SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013).

As relevant in this case, Social Security Ruling (SSR) 13-2p provides guidance for ALJs in conducting the DAA materiality analysis. *See id.* The ALJ "may consider medical opinions from treating or nontreating sources about the likely effects that abstinence from drugs or alcohol

5

would have on the impairment(s)." *Id.* at*8. "Usually, evidence from a period of abstinence is the best evidence for determining whether a physical impairment(s) would improve to the point of nondisability." *Id.* at *8. SSR 13-2p further states:

> In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

*Id.* at *15.

In Jade's case, the ALJ noted that "[m]ost of [Jade's] testimony did not clearly distinguish between her functioning when she was abstaining from illicit substances verses when she was abusing substances." (Admin. Tr. at 32.) However, the ALJ found that "the medical records show mental treatment and greater symptoms when she was abusing drugs, and because the records also suggested she has been abusing drugs the majority of the time over the past few years, most of her symptomatic and functional complaints were likely related to times she was abusing substances." (*Id.*)

The ALJ relied, in part, on the medical opinion of Dr. Tessnear, who concluded that "absent substance abuse, the claimant's impairments would not meet or equal a listing." (Admin. Tr. 1577.) To support this conclusion, Dr. Tessnear noted that, "it would be best to look [at] the claimant's functioning during periods of sustained abstinence, ideally in post-hospitalization outpatient treatment notes. Unfortunately, [Jade] rarely complied with follow-up treatment." (*Id.*) However, Dr. Tessnear relied on other sources of information in his

6

assessment of Jade, including a consultative examination by Dr. Gardner, in addition to "the claimant's mental status at the time of hospital discharge when she was substance-free, albeit for only a brief time." (*Id.*)  Although Dr. Tessnear found that, absent substance abuse, Jade's impairments do not meet or equal a listing, she does have some limitations. (*Id.* at 1578.)  Those limitations were properly considered and incorporated into the ALJ's RFC findings for Jade.

Additionally, the ALJ considered Jade's numerous visits to the emergency room, other medical appointments, and two brief periods of sobriety in evaluating the materiality of Jade's substance use in relation to her impairments. [2] (See Admin. Tr. 25–37.)  The ALJ provided thorough summaries for the many medical visits, evaluations, and consultations Jade had with different healthcare providers. (*Id.*)  The ALJ's finding that "when the claimant was not abusing multiple substances, she required little treatment and did not complain of severe symptoms, such as psychoses," is supported by substantial evidence.  After reviewing the evidence as a whole, the court can "build an accurate and logical bridge" between the ALJ's reasoning, the evidence discussed in his decision, and his findings regarding Jade's substance abuse. *Arakas*, 983 F.3d at 95.  Accordingly, the court finds that the ALJ's evaluation of Jade's substance abuse under SSR 13-2p is sufficient and supported by substantial evidence.

---

[2] Jade argues that "the evidence of record documents ongoing marijuana use during the periods of sobriety found by the ALJ." (Obj. to R&R 3.)  Essentially, Jade contends that the ALJ's analysis under SSR 13-2p is improper because she was never substance free, as she was consistently using marijuana.  SSR 13-2p notes that "[i]f a claimant does not have a period of abstinence, an acceptable medical source can provide a medical opinion regarding whether the claimant's impairments would be severely limiting even if the claimant stopped abusing drugs or alcohol. We consider the opinion of an acceptable medical source sufficient evidence regarding materiality as long as the acceptable medical source provides support for their opinion." SSR 13-2p, 2013 WL 621536, at *9 (Feb. 20, 2013).  Although the court finds that the ALJ properly considered two "distinct periods of sobriety in 2019," Dr. Tessnear's medical opinion alone is likely sufficient to conclude that Jade's substance use is material to the determination of disability. (Admin. Tr. 33; 1576–88.)

## 2. ALJ adequately considered the medical opinions of Dr. Tessnear and Dr. Gardner.

Next, Jade argues that the R&R erred in concluding that the ALJ adequately addressed the supportability and consistency of the opinions of Dr. Tessnear and Dr. Gardner. (Obj. to R&R 5.) Specifically, Jade contends that the ALJ failed to sufficiently explain why he did not find persuasive Dr. Tessnear's opinion that Jade "would occasionally need two absences per month and may have difficulty adapting to frequent changes in the work requirements." (*Id.*) Additionally, Jade contends that the ALJ did not "properly evaluate[] Dr. Gardner's opinion that [Jade] would do best in situations where she had no contact with the general public and infrequent contact with a small number of familiar co-workers." (*Id.* at 6.)

There are five factors for an ALJ to consider when determining the persuasiveness of a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c. Supportability and consistency are the two "most important factors" for an ALJ to consider when determining "how persuasive [they] find a medical source's medical opinions . . . to be." 20 C.F.R. § 416.920c(b)(2). "Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (internal citation omitted).

Dr. Tessnear opined that Jade "would have moderate impairment interacting with others, but she would be able to accept instructions from supervisors and have occasional interaction with coworkers." (Admin. Tr. 36.) In addition, he found that Jade "should not work with the general public." (*Id.*) Given that Jade would have "moderate impairment to concentration,

8

persistence, or pace," Dr. Tessnear opined that she would be off task 4–8% of a typical eight-hour workday. (*Id.*) Furthermore, he found that Jade "would have a moderate impairment to adapting and managing herself, but she would generally be able to complete a normal workday or workweek with one or occasionally two absences per month." (*Id.*)

The ALJ found Dr. Tessnear's opinion persuasive, but made minor adjustments based on the "totality of the evidence in the record." (*Id.*) Specifically, the ALJ determined that Jade "might be off task up to 8% of the workday due to her moderate impairment in concentration," rather than the lower of 4–8% suggested by Dr. Tessnear. (*Id.*) The ALJ also concluded that the evidence only supported one absence per month, noting that Dr. Tessnear did not cite any evidence to support why Jade might occasionally need two absences a month. (*Id.*) Additionally, the ALJ found that Dr. Tessnear's opinion about Jade's potential difficulty adapting to frequent changes in work requirements unpersuasive. (*Id.* at 37.) The ALJ explained that Dr. Tessnear did not cite any evidence to support that finding and furthermore, the record did not show "significant difficulty reacting to changes, especially when she is [] limited to [] simple work," which would not require her to learn any new skills. (*Id.*) Considering the evidence in its entirety, the court can "build an accurate and logical bridge" between the medical record evidence and the ALJ's rejection of portions of Dr. Tessnear's opinion. *Arakas*, 983 F.3d at 95.

Dr. Gardner opined that "[g]iven [Jade's] personality traits, she would do best in situations where she had no contact with the general public and infrequent contact with a small number of familiar coworkers." (Admin. Tr. 452.) The ALJ found Dr. Gardner's opinion "partially persuasive" and "somewhat consistent with the evidence on the record but not fully consistent." (*Id.* at 36.) In Jade's RFC, the ALJ found that "[s]he can have occasional

9

interaction with coworkers and supervisors but no interaction with the public. She should avoid exposure to large groups of people of more than 30 individuals." (*Id.* at 32.) Jade argues that the ALJ's limitation of 30 individuals "cannot be construed to be the same as a limitation to a small number of familiar coworkers," but she provides no case law to support this claim. Furthermore, the ALJ specifically referenced Jade's own testimony, in which she stated that she sometimes experienced difficulty going out in public, particularly when around large crowds, which she defined as 30 people or more. (*Id.* at 26.) The ALJ's RFC findings were based on Jade's own testimony, the medical evidence in the record, and the opinions of Dr. Gardner and Dr. Tessnear. (*Id.* at 35–36.) Considering the evidence in its entirety, the court can "build an accurate and logical bridge" between the medical record evidence and the ALJ's RFC finding that Jade should avoid exposure to large groups of people of more than 30 individuals. *Arakas*, 983 F.3d at 95.

For the foregoing reasons, the court finds that the ALJ's consideration of the medical opinions of Dr. Tessnear and Dr. Gardner is legally sufficient and supported by substantial evidence.

### 3. ALJ properly evaluated Jade's subjective allegations.

Lastly, Jade argues that the R&R "erred in concluding the ALJ's opinion includes a thorough and robust discussion of [Jade's] medical history and allegations, medical opinions, and the other evidence of record, including the circumstances of her substance abuse." (Obj. to R&R 7.) She contends that the ALJ's conclusions regarding Jade's substance abuse were not supported by substantial evidence. (*Id.*)

When evaluating a claimant's subjective statements about impairments and symptoms, ALJs follow a two-step framework. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529. First, the ALJ "determine[s] whether the individual has a medically

10

determinable impairment [] that could reasonable be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3.  Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* at *4.  In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, the ALJ thoroughly addressed Jade's subjective allegations and provided a well-reasoned explanation to support his RFC findings.  After considering Jade's allegations, the ALJ provided a comprehensive review of the medical evidence, finding that Jade's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. Tr. 32.)  The ALJ's decision includes a detailed discussion of Jade's medical history, her allegations, various medical opinions, and additional record evidence, including the circumstances surrounding her abuse. (*See* Admin Tr. 24–38.)  The court need not restate all those details here, as they are adequately laid out in the 17-page decision of the ALJ. (*Id.* at 22–39.)  Having reviewed the pertinent portions of the record, the R&R, and the filings by the parties, in conjunction with the applicable law, the court finds that the ALJ properly evaluated Jade's subjective allegations.[3]  Considering the evidence

---

[3] Jade also relies on *Arakas v. Comm'r*, 983 F.3d 83, 100 (4th Cir. 2020), and *Brown v. Comm'r SSA*, 873 F.3d 251, 270 (4th Cir. 2017), to support her position that the ALJ did not understand Jade's limits in completing her activities of daily living. (Obj. to R&R 8.)

11

in its entirety, the court can "build an accurate and logical bridge" to the ALJ's conclusion that Jade's subjective allegations are not entirely consistent with the medical evidence and other evidence in the record. *Arakas*, 983 F.3d at 95.

### III. CONCLUSION AND ORDER

After review of Jade's objections and the record, the court finds that the ALJ's decision was legally sufficient and supported by substantial evidence. Accordingly, it is hereby ORDERED as follows:

1. The R&R (Dkt. No. 20) is ADOPTED;

2. Plaintiff's objections (Dkt. No. 21) are OVERRULED;

3. Plaintiff's motion for summary judgment (Dkt. No. 13) is DENIED; and

4. The Commissioner's decision is AFFIRMED.

---

In *Arakas*, the Fourth Circuit found that the ALJ's analysis of a claimant's activities was erroneous in two ways: (1) he improperly disregarded the claimant's qualifying statement regarding the limited extent she could perform daily activities, and (2) he failed to adequately explain how her limited ability to carry out daily activities supported his conclusion that she could sustain an eight-hour workday. *Arakas*, 983 F.3d at 99. The ALJ in that case did not mention or address key testimony of the claimant that alleged difficulties performing her daily activities. That is not the case here. The ALJ took into account Jade's daily activities, such as washing dishes, watching TV, and scrapbooking, as well as her alleged symptoms, including difficulty concentrating and becoming distracted when attempting to focus on tasks for more than 20 minutes. The ALJ concluded that Jade's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," as detailed throughout the ALJ's decision. (Admin. Tr. 32.)

In *Brown*, the Fourth Circuit found that the "ALJ noted various of Brown's activities—such as 'cooking, driving, doing laundry, collecting coins, attending church and shopping'—but did not acknowledge the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job." *Brown*, 873 F.3d 251, 269. The court also noted other "instances of inaccuracy and unreasonableness in the ALJ's adverse credibility finding" of Brown. *Id.* at 270. This court need not rehash all of those errors by that ALJ because they do not exist in this case. The ALJ notes Jade's statements about her daily activities and mentions her feelings of depression, anxiety, drowsiness and fatigue from medications, difficulty concentrating, and more. (Admin. Tr. 32.) The ALJ understood Jade's limits in completing her activities of daily living. Considering the evidence in its entirety, the court can "build an accurate and logical bridge" between the ALJ's reasoning from the evidence discussed in his decision and his conclusion regarding Jade's RFC. *Arakas*, 983 F.3d at 95.

An appropriate judgment order will be entered.

Entered: January 2, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge